UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GRACIE PALENCIA,

    Plaintiff,

v.                                    Case No. 8:19-cv-1062-T-AEP

ANDREW M. SAUL,
Commissioner of Social Security,

    Defendant.
_____/

## **ORDER**

Plaintiff seeks judicial review of the denial of her claim for a period of disability and Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

**I.**

**A.**     **Procedural Background**

Plaintiff filed an application for a period of disability and SSI (Tr. 214-221). The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration (Tr. 93-114, 117-137). Plaintiff then requested an administrative hearing (Tr. 154-160). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 35-64). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 13-28). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-6). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

### B. Factual Background and the ALJ's Decision

Plaintiff, who was born in 1991, claimed disability beginning July 8, 2017 (Tr. 16). Plaintiff obtained a high school education (Tr. 27). Plaintiff's past relevant work experience included work as fast food cashier, dog bather, and retail store cashier (Tr. 27). Plaintiff alleged disability due to bipolar disorder, post-traumatic stress disorder, clinical depression Generalized anxiety disorder, social anxiety disorder, panic disorder, insomnia, asthma, herniated disc, degenerative disc disorder. OCD, diabetes, cartilage problem (right knee), polycystic ovarian syndrome, acid reflux, and diabetic nerve pain (Tr. 93-94).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through and had not engaged in substantial gainful activity since March 13, 2018, the application date (Tr. 18). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: degenerative disc disease; gastroesophageal reflux disease; asthma; diabetic peripheral neuropathy; degenerative joint disease; obesity; bipolar disorder; generalized anxiety disorder; posttraumatic stress syndrome; obsessive-compulsive disorder; polysubstance abuse in remission; and depression (Tr. 18). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 19). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform:

> [L]ight work as defined in 20 CFR 416.967(b) except she can stand and/or walk 6 hours in an 8 hour workday and sit for 6 hours in an 8 hour workday; she can never climb ladders, ropes, or scaffolds; she must have no exposure to unprotected heights or hazardous machinery; she is limited to no more than occasional exposure to chemicals, dust, fumes, or gases; she is limited to no more than occasional interaction with coworkers, supervisors, and public; she can maintain concentration, persistence, and pace for 95% of the

> workday exclusive of breaks; and she will likely miss or leave work early 6 days per year.

(Tr. 22). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 23).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform her past relevant work (Tr. 27). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a retail marker, garment sorter, and laundry folder (Tr. 28). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 28).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R.

§§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates

4

against the ALJ's decision. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (citation omitted). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

### III.

Plaintiff argues that the ALJ erred by (1) failing to fully and fairly develop the record; (2) failing to properly consider the opinion of Dr. Pasman when rendering Plaintiff's mental RFC; and (3) rendering an RFC that was not supported by substantial evidence. For the following reasons, the ALJ applied the correct legal standards and the ALJ's decision is supported by substantial evidence.

**A.     Failure to Develop the Record**

First, Plaintiff contends that the ALJ failed to fairly and fully develop the record by not issuing a subpoena to Dr. Kamat for his medical records regarding Plaintiff's migraine headaches. Even though Social Security proceedings are inquisitorial rather than adversarial in nature, claimants must establish their eligibility for benefits. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007); 20 C.F.R. §§ 404.1512(a), 416.912(a). During the administrative process, therefore, a claimant must inform the Social Security Administration about or submit all evidence known to the claimant relating to whether the claimant is blind or disabled. 20 C.F.R. §§ 404.1512(c), 416.912(c). Though the claimant bears the burden of providing medical evidence showing she is disabled, the ALJ is charged with developing a full

5

and fair record. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). The ALJ maintains this basic obligation to develop a full and fair record without regard for whether the claimant is represented by counsel. *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995) (citation omitted). When the plaintiff demonstrates that the record reveals evidentiary gaps which result in unfairness or "clear prejudice," remand is warranted. *Id.* at 935; *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) ("Remand for further factual development of the record before the ALJ is appropriate where the record reveals evidentiary gaps which result in unfairness or clear prejudice.") (quotation and citation omitted); *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) ("However, there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record.") (citation omitted).

Although the ALJ has a duty to develop the record, the ALJ is not required to order a consultative examination when the record contains sufficient evidence upon which the ALJ can make an informed decision. *Ingram*, 496 F.3d at 1269 (citing *Doughty v. Apfel,* 245 F.3d 1274, 1281 (11th Cir. 2001)); 20 C.F.R. §§ 404.1512(e), 404.1519a, 416.912(e), 416.919a. The decision to recontact a medical source or to order a consultative examination remains within the discretion of the Commissioner. *See, generally,* 20 C.F.R. §§ 404.1520b(c), 416.920b(c). If the evidence is consistent but the Commissioner does not have sufficient evidence to determine whether a claimant is disabled, or, if after weighing the evidence, the Commissioner determines that a conclusion cannot be reached about whether the claimant is disabled, the Commissioner will determine the best way to resolve the inconsistency or insufficiency, including re-contacting a treating physician or medical source or asking the claimant to undergo a consultative examination. 20 C.F.R. §§ 404.1520b(c)(1) & (3), 416.920b(c)(1) & (3). Further, an ALJ may issue subpoenas for the production of records at the request of a party

when it is "reasonably necessary for the full presentation of the case." 20 C.F.R. § 404.950(d)(2). The party's written request for a subpoena must "state the important facts that the ... document is expected to prove and indicate why these facts could not be proven without issuing a subpoena." *Id.*

In this instance, Plaintiff informed the ALJ that the records from Orthopedic Medical Group and Dr. Kamat were outstanding and that they would produce those records as soon as they could (T. 61). The ALJ stated that he would wait until he received those documents before rending a decision and that it was critical for him to see them (T. 61). The ALJ gave Plaintiff two weeks, until January 21, 2019, to submit the records (T. 38). On January 21, 2019, Plaintiff notified the ALJ that the records from Dr. Kamat were still not produced and that Dr. Kamat could not process the records until January 25, 2019, and Plaintiff subsequently requested the ALJ to issue a subpoena for the records (T. 327). The ALJ did not issue a subpoena and rendered his decision finding Plaintiff not disabled and denied her claim for benefits (T. 13-28). Plaintiff contends that the ALJ's failure to issue a subpoena warrants remand and that based upon the ALJ's statements at the hearing, Plaintiff has proven that Dr. Kamat's records are probative. Plaintiff's arguments fail for several reasons.

First, Plaintiff's subpoena request did not state the pertinent facts that Dr. Kamat's documents were expected to prove as required under 20 C.F.R. § 416.1450(d)(2). Instead, Plaintiff merely informed the ALJ that the records would not be produced on time and requested the ALJ issue a subpoena to a listed address (T. 327). Notably as well, Plaintiff did not produce, nor has yet to produce, the records from Dr. Kamat. Plaintiff did not produce any additional evidence to the Appeals Council and still has not produced any of Dr. Kamat's records for consideration (Tr. 1-4). Further, Plaintiff has failed to provide any argument as to how the ALJ's failure to consider the records of Dr. Kamat has resulted in an evidentiary gap or prejudice to

7

her. Plaintiff attempts to argue that the ALJ's commentary at the administrative hearing, namely his statement that the records were critical, satisfies this burden. *See Henry* 802 F.3d at 1267. However, the ALJ's statements do not establish that there exists an evidentiary gap or that Plaintiff would be prejudiced should these records not be considered. Plaintiff bears the burden of establishing an evidentiary gap or prejudice and not only has she not produced any records from Dr. Kamat, but importantly Plaintiff has also failed to even establish what specific evidence from Dr. Kamat exists and is favorable to her. Therefore, it appears Plaintiff only speculates that further development of the record to include Dr. Kamat's opinions might have produced evidence favorable to her, which is insufficient to warrant remand. *See Sarria v. Comm'r of Soc. Sec.*, 579 Fed.Appx. 722, 724 (11th Cir. 2014).

Further, it appears that the evidence relied upon by the ALJ was neither inconsistent nor insufficient. Rather, as the decision indicates, the record contained sufficient evidence, including medical evidence discussing Plaintiff's migraine headaches (T. 423, 426, 540, 556, 562, 570, 590, 593, 598, 602, 604, 605, 620, 624, 640, 648, 653, 658, 673, 684, 689, 691, 704, 706, 722, 732, 737, 747, 799, 804, 816, 821, 832, 863, 867, 870). Plaintiff was represented during the administrative process and was responsible for producing evidence related to her disability. *See* 20 C.F.R. § 416.912(a)(c). Thus, Plaintiff's expansive medical records, consisting of numerous evidence discussing migraine headaches, provided sufficient evidence for the ALJ to determine whether Plaintiff's migraine headaches were disabling. Again, Plaintiff failed to demonstrate how she was prejudiced by the ALJ's decision not to issue a subpoena and has not shown the existence of an evidentiary gap. *See Henry*, 802 F.3d at 1267. Therefore, remand is unwarranted.

### B.     Medical Opinion Evidence[1]

Next, Plaintiff contends that the ALJ erred by failing to state what weight was given to the psychological consultative examination by Dr. Lawrence N. Pasman. Medical opinions, which include physician statements regarding the nature and severity of the claimant's impairments, may support the ALJ's determination of whether a claimant suffers from a severe impairment. 20 C.F.R. § 404.1527(a)(2). When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). In determining the weight to afford a medical opinion, the ALJ considers the following factors: the examining and treatment relationship between the claimant and doctor, the length of the treatment and the frequency of the examination, the nature and extent of the treatment relationship, the supportability and consistency of the evidence, the specialization of the doctor, and other factors that tend to support or contradict the opinion. *Hearn v. Comm'r Soc. Sec. Admin.*, 619 Fed.Appx. 892, 895 (11th Cir. 2015). Plaintiff bears the burden of showing that she has a severe impairment or combination of impairments that may qualify as a disability. *Hutchinson v. Astrue*, 408 Fed.Appx. 324, 326 (11th Cir. 2011)(citing *McDaniel v. Bowen*, 800 F.2d 1026,

---

[1]Plaintiff also attempts to argue that the ALJ should have re-contacted Dr. Lawrence N. Pasman to complete a mental residual functional capacity evaluation. However, the decision to recontact a medical source or to order a consultative examination remains within the discretion of the Commissioner. *See, generally,* 20 C.F.R. §§ 404.1520b(c), 416.920b(c). If the evidence is consistent but the Commissioner does not have sufficient evidence to determine whether a claimant is disabled, or, if after weighing the evidence, the Commissioner determines that a conclusion cannot be reached about whether the claimant is disabled, the Commissioner will determine the best way to resolve the inconsistency or insufficiency, including re-contacting a treating physician or medical source or asking the claimant to undergo a consultative examination. 20 C.F.R. §§ 404.1520b(c)(1) & (3), 416.920b(c)(1) & (3). Significantly, it appears Dr. Pasman did complete a mental evaluation of Plaintiff in which the ALJ considered (T. 25, 679-685). Therefore, Plaintiff's argument appears misplaced and the Court will focus solely on the Plaintiff's second issue that the ALJ erred in failing to state the weight afforded to the opinion of Dr. Pasman. (Doc. 20, at 22-24).

9

1031 (11th Cir. 1986). Further, "[t]o the extent that the administrative law judge erred by failing to state with particularity the weight assigned to [treating physicians'] medical opinions, the error is harmless" if it does not "affect the administrative law judge's ultimate determination." *Hunter v. Comm'r of Soc. Sec.*, 609 Fed.Appx. 555, 558 (11th Cir. 2015) (finding that the ALJ's decision was supported by substantial evidence and, therefore, the ALJ's failure to explicitly state the weight afforded to treating physicians' testimony was harmless error); *Tillman v. Comm'r Soc. Sec. Admin.*, 559 Fed.Appx. 975, 976 (11th Cir. 2014) (recognizing harmless error analysis in the context of an ALJ's failure to address a treating source's opinion and concluding that "when the ALJ's error did not affect its ultimate findings, the error is harmless, and the ALJ's decision will stand"); *Caldwell v. Barnhart*, 261 Fed.Appx. 188, 191 (11th Cir. 2008) (finding that the ALJ's failure to state the weight given to a physician's opinions was harmless error because the opinions did not otherwise contradict the ALJ's findings); *Wright v. Barnhart*, 153 Fed.Appx. 678, 684 (11th Cir. 2005)(finding harmless error for the ALJ's failure to explicitly state what weight he afforded to a number of physicians' medical opinions when the opinions did not directly contradict the ALJ's findings).

Here, Dr. Pasman is a consultative examiner and, as such, his opinion is not entitled to the deference normally given treating sources. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)(finding that opinions of consultative examining physicians "are not entitled to deference because as one-time examiners they were not treating physicians"); *Crawford v. Comm'r of Soc. Sec.*, F.3d 1155, 1160-61 (11th Cir. 2004)("The ALJ correctly found that, because [a consultative examiner] examined [claimant] on only one occasion, her opinion was not entitled to great weight."); 20 C.F.R. § 404.1527(c)(2) (explaining that treating sources are given greater weight because their opinions "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual

examinations, such as consultative examinations or brief hospitalizations"). Dr. Pasman is not Plaintiff's treating physician, rather he examined Plaintiff to provide opinions as to Plaintiff's social security applications. Thus, his opinion is not entitled to significant weight.

Contrary to Plaintiff's argument, the ALJ specifically addressed the opinion of Dr. Pasman (Tr. 24-25). The ALJ, however, did not assign a particular weight to his opinion. The ALJ noted Dr. Pasman's consultative examination and his opinion that Plaintiff mental status examination described her as "alert, fully oriented, slightly impaired in recent memory, no perceptual deficits, adequate appearance, psychomotor deficits, normal speech, difficulty in establishing/maintaining rapport, reported tired mood/affect, impaired concentration, impaired impulse control, intact association, intact abstraction, impaired computation, intact insight and questionable judgement." (Tr. 24-25.) Notably, the ALJ's failure to afford a particular weight to Dr. Pasman's opinion is harmless. *Tillman*, 559 Fed.Appx at 975-76 (recognizing harmless error analysis in the context of an ALJ's failure to address a treating source's opinion and concluding that "when the ALJ's error did not affect its ultimate findings, the error is harmless, and the ALJ's decision will stand"); *Caldwell*, 261 Fed.Appx., at 191 (finding that the ALJ's failure to state the weight given to a physician's opinions was harmless error because the opinions did not otherwise contradict the ALJ's findings); *Wright*, 153 Fed.Appx. at 684 (finding harmless error for the ALJ's failure to explicitly state what weight he afforded to a number of physicians' medical opinions when the opinions did not directly contradict the ALJ's findings).

Plaintiff points to the ALJ's failure to discuss Dr. Pasman's opinion that Plaintiff's prognosis was guarded, her bi-polar disorder was "severe to moderate" and, she had deficits in self-care and safety, social interpersonal skills and work skills. (Doc. 20, at 24). However, the ALJ discussed Dr. Pasman's opinions and explicitly addressed his assessment that Plaintiff's

11

memory was impaired, with difficulties in concentration, and that Plaintiff had psychomotor deficits, difficulty maintaining rapport, with impaired impulse control and questionable judgment. (T. 25). The ALJ's RFC assessment accounts for Plaintiff's mental impairments, restricting Plaintiff to light work and limited to no more than occasional interaction with coworkers, supervisors, and public, and recognized the ability to maintain concentration, persistence, and pace for 95% of the workday exclusive of breaks (Tr. 22). In light of the ALJ's RFC assessment, it is unclear how assigning a particular weight to Dr. Pasman's opinions would have changed the ALJ's assessment or how Dr. Pasman's opinion conflicts with the ALJ's findings. Thus, any error in the ALJ's failure to assign Dr. Pasman's opinions a particular weight is harmless. *Hunter*, 609 Fed.Appx. at 558; *Tillman*, 559 Fed.Appx. at 975-76; *Caldwell*, 261 Fed.Appx at 191.; *Wright*, 153 Fed. Appx. at 684. Therefore, Plaintiff's contention does not warrant reversal.

Additionally, Plaintiff contends that the ALJ erred by affording more weight to the examination of Dr. David Tessler, Psy.D, a non-examining psychologist (Tr. 21,23) as opposed to Dr. Pasman. The opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician. *Broughton v. Heckler*, 776 F. 2d 960, 961 (11th Cir. 1985), *Choquette v. Comm'r of Soc. Sec.*, 695 F. Supp. 2d 1311 (M.D. Fla. 2010). The administrative law judge need not defer to the opinion of a physician who conducted a single examination because that physician is not a treating physician. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). The opinion of a non-examining physician "taken alone" does not constitute substantial evidence to support an administrative law judge's decision. *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990). But an administrative law judge can rely on a non-examining physician's report in denying benefits where it does not contradict information in the examining physicians' reports. *See Edward v. Sullivan,* 937 F.2d 580, 584-85 (11th Cir.

1991). Although the opinion of an examining physician is ordinarily entitled to greater weight than that of a non-examining physician, the administrative law judge is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *Sryock v. Heckler*, 765 F.2d 834, 835 (11th Cir. 1985).

When considering an examining, non-treating medical opinion, "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the administrative law judge] will give that opinion. The better an explanation a source provides for an opinion, the more weight [the administrative law judge] will give that opinion." 20 C.R.F. § 404.1527(c)(3). Moreover, "because non-examining sources have no examining or treating relationship with [the applicant], the weight [the administrative law judge] will give their opinions will depend on the degree to which they provide supporting explanations for their opinions." *Id.* In addition, "the more consistent an opinion is with the record as a whole, the more weight [the administrative law judge] will give to that opinion." *Id.* § 404.1527(c)(4).

Here, substantial evidence supports the weight the ALJ gave to the medical opinions of Dr. Pasman and Dr. Tessler. As a one-time examiner, Dr. Pasman was not a treating physician, and the ALJ was not required to afford special deference to his opinions. *See McSwain*, 814 F.2d at 619. As stated, the ALJ did consider the opinion of Dr. Pasman and the ALJ's failure to assign specific weight was harmless. Further, although the opinion of an examining physician is ordinarily entitled to greater weight than the opinion of a non-examining physician, the ALJ was free to reject the opinions of Dr. Pasman. *Id.* The non-examining physician, Dr. Tessler, explained his conclusions about Plaintiff's residual functional capacity and his opinion was consistent with the treatment records as a whole, thus the weight afforded to Dr. Tessler's opinion was not in error.

13

### C.     Residual Functional Capacity

Finally, Plaintiff contends that the ALJ's RFC was not supported by substantial evidence. The ALJ rendered an RFC that Plaintiff could:

> [S]tand and/or walk 6 hours in an 8 hour workday and sit for 6 hours in an 8 hour workday; she can never climb ladders, ropes, or scaffolds; she must have no exposure to unprotected heights or hazardous machinery; she is limited to no more than occasional exposure to chemicals, dust, fumes, or gases; she is limited to no more than occasional interaction with coworkers, supervisors, and public; she can maintain concentration, persistence, and pace for 95% of the workday exclusive of breaks; and she will likely miss or leave work early 6 days per year.

(T. 22). At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545, 416.920(a)(4)(iv), 416.945. To determine a claimant's RFC, an ALJ makes an assessment based on all the relevant evidence of record as to what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In rendering the RFC, therefore, the ALJ must consider the medical opinions in conjunction with all the other evidence of record and will consider all the medically determinable impairments, including impairments that are not severe, and the total limiting effects of each. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2) & (e), 416.920(e), 416.945(a)(2) & (e); *see Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that the "ALJ must consider the applicant's medical condition taken as a whole"). In doing so, the ALJ considers evidence such as the claimant's medical history; medical signs and laboratory findings; medical source statements; daily activities; evidence from attempts to work; lay evidence; recorded observations; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication or other treatment the claimant takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of

pain or other symptoms; any measures the claimant uses or has used to relieve pain or symptoms; and any other factors concerning the claimant's functional limitations and restrictions. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); SSR 96-8p, 1996 WL 374184 (July 2, 1996); 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 404.1545(a)(3), 416.929(c)(3)(i)-(vii), 416.945(a)(3).

First, Plaintiff argues that the ALJ erred when opining that Plaintiff would likely only miss six days of work per year. According to the record, and as Plaintiff details, between 2017-2018, Plaintiff was in the hospital or absent due to doctor's appointments for a total of 26 days. (Doc. 20, at 30). However, as the Commissioner contends, only one of Plaintiff's Baker Act hospitalizations occurred during the relevant period and was for drug and alcohol intoxication (Tr. 23, 43-45, 549). Further, the Commissioner contends that many of Plaintiff's visits were for follow-up appointments that could be made during non-work hours (Doc. 20, at 36);(Tr. 396-99, 430-34, 624-27, 686). The Court agrees with the Commissioner and does not find Plaintiff's absenteeism argument availing.

To begin, Plaintiff's number of medical appointments do not render her disabled. "[W]hether the number of medical appointments affects her ability to work is not an appropriate consideration for assessing her residual functional capacity because that determination considers only the functional limitations and restrictions resulting from medically determinable impairments." *Cherkaoui v. Comm'r of Soc. Sec.*, 678 Fed.Appx. 902, 904 (11th Cir. 2017)(citing SSR 96-8p). Moreover, the number of medical appointments she attended "is not a functional limitation caused by her impairments that would affect her physical or mental capabilities." *Id*. However, in determining a Plaintiff's RFC, the ALJ must consider all the relevant evidence of record, including the effects of treatment, taking into consideration limitations or restrictions imposed by the mechanics of treatment, such as the frequency of

15

treatment, duration, and disruption to routine. SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). Though the Eleventh Circuit has rejected the argument that numerous medical appointments render a claimant disabled, *Cherkaoui* 678 F.Appx. at 904, the ALJ must still consider the effects of a claimant's treatment in conjunction with the other evidence of record. In this instance, the ALJ did so. The ALJ discussed Plaintiff's hospitalizations and all the medical treatment Plaintiff received prior to the date of the decision (Tr. 24-27). In doing so, the ALJ considered the length and nature of the treatment (Tr. 24-27).

Additionally, as the Commissioner contends, and as the record supports, Plaintiff was not required, nor would be required, to schedule her medical appointments during working hours so that they would interfere with her ability to obtain work. *Id*. Further, although Plaintiff was Baker Acted a total of four times since 2017, only the Baker Act in April 2018 was during the relevant period and it was partly due to drug and alcohol intoxication (Tr. 24, 548-51). Plaintiff was subsequently released after treatment with medication (T. 550). The ALJ also accounted for Plaintiff's absenteeism in rendering her RFC by stating that Plaintiff would miss approximately six days of work a year (T. 22). Therefore, Plaintiff failed to demonstrate that her condition, or any attendant medical treatment or hospitalizations, established disabling limitations for a consecutive twelve-month period. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1509, 416.909. Nor did Plaintiff establish that her impairments prevented her from performing work within the confines of the RFC or as identified by the VE. Instead, the ALJ properly considered the evidence of record, including the evidence from Plaintiff's 2017-2018 hospitalizations, medical appointments, and all subsequent treatment notes. In this regard, substantial evidence supports the ALJ's decision, and the ALJ applied the proper legal standards.

16

Next, Plaintiff contends that the ALJ failed to properly consider her physical and mental limitations[2] with regard to her use of a cane, as well as her chronic and acute asthma and bronchitis when rendering her RFC. Plaintiff argues that substantial evidence does not support the RFC that she can stand and walk for six out of eight hours a day as well as occasional exposure to chemicals, dusts, fumes, or gases. First, the record supports that the ALJ properly considered Plaintiff's use of her cane and diagnosis of diabetic peripheral neuropathy when rendering Plaintiff's RFC. "To find that a hand-held assistive device, such as a cane, is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)" *Norman v. Comm'r of Soc. Sec.*, 2015 WL 4397150, at *5 (M.D. Fla. July 16, 2015) (citing *Wright v. Colvin*, 2014 WL 5591058, at *4 (S.D. Ga. 2014). (quoting SSR 96–9p, 1996 WL 374185, at *7) (internal quotations omitted). "Moreover, a prescription or the lack of a prescription for an assistive device is not necessarily dispositive of medical necessity." *See Id.* (citing *Staples v. Astrue*, 329 F. Appx. 189, 191 (10th Cir. 2009).

Here, the ALJ listed diabetic peripheral neuropathy as one of Plaintiff's severe impairments (T. 18). The ALJ did recognize that Plaintiff has limitations caused by her back, knee, and hip pain, but the ALJ incorporated those limitations into his RFC by restricting her to light work. In rendering her RFC, the ALJ relied upon treatment notes and hospital records indicating right knee, hip, and back pain, but noted conservative treatments (T. 408, 695-696). The ALJ explained that May 2017 imaging revealed no abnormalities of the back, and Plaintiff

---

[2] Plaintiff also argues that the ALJ erred in rendering her RFC by failing to consider the medical records of Dr. Kamat as well as not affording proper weight to Dr. Pasman's report. As the Court has already addressed these arguments, the Court will focus only on Plaintiff's remaining two issues regarding the ALJ's consideration of Plaintiff's walking and breathing limitations when rendering the RFC.

was diagnosed with back sprain and treated conservatively (Tr. 25-26, 728). Plaintiff subsequently reported right lower extremity pain following a fall, but the ALJ noted that her examination revealed full range of motion, intact sensation, and full strength, as well as negative x-ray findings (Tr. 26, 430-33). Additionally, multiple reports indicate that Plaintiff had normal gait/station, normal coordination, full range of motion of the bilateral knees, and no weakness (Tr. 26, 800, 805, 822, 848, 864, 868, 871). Indeed, the ALJ noted that treatment notes in May of 2018 showed Plaintiff was using a cane due to right foot, right hip, and right knee pain (T. 18). However, the ALJ discussed that the treatment notes revealed the cane was used for balance due to right lower extremity pain, but there was no indication that a cane was prescribed or medically necessary for the Plaintiff (T. 19). Further, the ALJ explained that "examination notes from Tampa Orthopedic Medical Group in December of 2018 indicated normal gait/station, normal coordination, full range of motion of the bilateral knees, no valgus/varus instability of the bilateral knees, no weakness of the bilateral knees, no effusion/crepitus of the bilateral knees, no tenderness of the left knee, and lateral joint line tenderness of the right knee (Hearing Testimony and Exhibits B11F, B25F, B26F, and B28F)." (T. 19, 862-872). Thus, the ALJ determined that the cane was not medically necessary and relied upon sufficient evidence in rendering Plaintiff's RFC.

Similarly, the ALJ listed asthma as a severe impairment for Plaintiff (T. 18). The ALJ considered Plaintiff's breathing impairments throughout his decision and therefore limited Plaintiff to only occasional exposure to chemicals, dust, fumes, or gases (T. 25-26). The ALJ noted that Plaintiff had normal pulmonary/chest examinations consistently indicating normal effort, normal breath sounds, no respiratory distress, no wheezes, and no rales, and an unremarkable spirometric pulmonary function test (Tr. 25, 389, 401, 410, 442, 445, 616, 693, 698, 723, 727, 742, 817, 832). The ALJ also explained that Plaintiff's asthma was treated

conservatively with breathing treatments (Tr. 25, 789). Plaintiff has failed to demonstrate that her asthma is more limiting than occasional exposure precluding her from working as a retail marker, garment sorter, and laundry folder. Thus, based upon the record, the ALJ relied upon sufficient evidence in rendering Plaintiff's RFC and properly accounted for her breathing and walking limitations. As such, remand is unwarranted.

## IV.

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is AFFIRMED.

2. The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 25th day of September, 2020.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

cc: Counsel of Record